### No. 7906.

### CITY OF NEW ORLEANS vs. JOHN DUBARRY.

The license tax imposed by the City of New Orleans on keepers of private markets, does not violate the Constitutional rule of equality and uniformity in taxation, though no license tax at all is imposed upon the sellers of meat, vegetables and other articles, in the public markets of the City.

APPEAL from the Third District Court for the parish of Orleans. *Monroe*, J.

*S. P. Blanc*, Assistant City Attorney, and *Denégre & Stauffer* for Plaintiff and Appellant.

*Simeon Belden* for Defendant and Appellee.

The opinion of the Court was delivered by

TODD, J. The City of New Orleans sues to recover of the defendant the sum of three hundred dollars, the amount of a license tax claimed to be due by him as the keeper of a private market.

The defense is that the city ordinance imposing this license is in violation of that clause of the Constitution requiring taxation to be equal and uniform.

There was judgment for the defendant and the city has appealed.

The tax or license is resisted on the ground that market men selling meat, vegetables, etc., in the public markets of the city are not required to pay a license, whilst those conducting private markets in which the same articles are sold, are required to pay the license in question.

The City of New Orleans has power in its discretion to tax all trades and callings save those that are specially exempted. This conceded, taxation, under the Constitution, must be uniform, but it need not be universal. That is, upon every distinct trade, calling or occupation not exempted, a license may be required. But the city may exercise this power upon certain objects and callings, and may ignore and so exempt others from its operation. Certain occupations may be taxed for a greater amount, and others for a less, and to that end the city may divide occupations and callings into several classes, and impose a different tax upon each class; but upon all objects of taxation in the same class there must be equality.

State vs. Poydras, 9 An. 163.

State vs. Lathrop, 10 An. 402.

Upon this point we read in Cooley on Taxation, p. 128, as follows :

" It has already been stated that inequality does not necessarily follow the restricting to a few subjects only or to a single subject. A license tax cannot be deemed unequal because reaching one occupation

31

only, if it is to reach all who follow that. Let it reach all of a class either of persons or things, whether they reside in any particular locality, or are scattered all over the State."

In further illustration of this principle, we find in the case of Kaliski vs. Grady, 25 An. 576, it was shown that a tax of $50 was levied upon dealers in spiritous liquors on steamboats, and $85 on persons carrying on the same business on land, and it was held constitutional.

And in the case of the City vs. Kaufman, 29 An. 283, the keeper of a junk store, where iron, paper, rags, cordage, etc., were sold, was adjudged to pay a license of $250, though it was shown that the ordinary dealers in merchandise including those articles were charged a much lower license.

Applying these principles to this case, the question arises, do the keepers of the private markets and those selling meats, vegetables, fish, etc., in the public markets, follow the same occupation and calling, and is that occupation and calling so completely the same that those pursuing them respectively cannot be separated and classified, and the one class subjected to a license and the other exempted from any tax whatever? And this is the question for our solution.

The City of New Orleans for the convenience of its citizens has erected public markets in various localities in the city. The buildings are large and commodious and erected at great expense. In their construction it was designed not only to provide for the wants of the citizens, but also to construct them in such a manner as to adapt them fully to the purposes for which they were intended, and at the same time in their peculiar construction to fit them to be used without detriment to the public health.

Further, to promote these objects, these public markets have been subjected to peculiar police regulations. Thus these markets are required to be opened and closed at certain hours. They are also divided into different departments or sections, so to speak. One, in which meat is sold exclusively; another, fish; another, vegetables; and so on. Not only this, but they are further subdivided into stalls, and it is required that only one article or commodity can be sold in each stall. This division and subdivision subserves a double purpose, the convenience of the taxpayers and, chiefly, the facility that is thus offered for a thorough inspection on the part of the officers provided to that end by the city government.

Do the private markets, equally with the public markets, present all these conditions, restrictions and advantages? The evidence satisfies us that they do not.

In the first place, the buildings in which these private markets are kept are owned or leased by those keeping them. They have not been

constructed with any view to the business for which they are used, but are mere ordinary buildings. And the testimony in the record shows that they cannot be as easily and effectually subjected to the proper sanitary regulations as the public markets, to promote cleanliness and the soundness and preservation of the articles sold.

Besides, all the various articles which are sold in these private markets are not offered for sale on separate stalls or apartments as in the public markets, but we find that all such commodities as meat, poultry, fish, game, fruit, vegetables, etc., are kept exposed for sale in the same room, altogether. They are, it is true, subject to be regulated by rules established by the city authorities, but, in fact, whatever regulations may be made for them, they cannot, in the very nature of things, be subjected to the same regulations provided for the public markets, nor are they as favorable for that prompt and complete inspection which the public markets afford, and which offers the main protection to the public health.

We can realize more readily the difference between them were we to suppose for a moment that the public markets were closed and abolished, and the sole reliance of the citizens were on the private markets to supply them with all these commodities for daily use. We can easily see what injurious consequences would result to the convenience of the citizens, and to the police, good government and health of the city.

With these differences between the two kinds of markets, and with all these advantages in favor of the public markets, we deem it sound policy and the exercise of a wise discretion on the part of the city to encourage all who desire to sell their commodities to occupy the public markets provided by the city; and that there is that difference in the conditions of the business, the mode and method of it as pursued in the two markets, to justify the city in treating these market men as comprising two distinct classes of dealers and discriminating between them by licensing the one and indirectly exempting the other.

Courts of justice will not interfere with the administration of the revenue laws, State or municipal, and strike those laws with nullity unless they are in plain violation of the Constitution. No system of revenue or taxation devised by human wisdom has even been found in its practical operation to bear equally upon all and to meet the exact theoretical standard of equality and uniformity. If it substantially meets these constitutional requirements, and in its spirit and intendment conforms thereto, it is all that can be expected or required.

It is proper to say that no other question than the one discussed is presented by the record. The case was argued and has been considered solely with reference to the provisions of the Constitution of

.1868, since the ordinance complained of was passed whilst that Constitution was in force.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and proceeding to render such judgment as should have been rendered by the court below, it is ordered, adjudged and decreed that the plaintiff recover of the defendant the sum of three hundred dollars, the amount of the license in question, with the interest as prayed for from the first of March, 1879, and that the privilege and right of pledge claimed be recognized and made executory, and the injunction issued prohibiting the defendant from pursuing his occupation as the keeper of a private market till the payment of the license be made perpetual, defendant to pay costs of both courts.

Mr. Justice POCHÉ takes no part in this case.

Rehearing refused.